### McINTOSH v. MINER et al.

(Supreme Court, Appellate Division, First Department. July 17, 1900.)

1. THEATRICAL CONTRACTS—CONSTRUCTION—QUESTION FOR JURY.
    Where parties contracted to assume management of another as star in a theatrical company, to select the company, route, and plays, and pay him a certain weekly sum and a percentage of net profits during three seasons, the first to commence some time in November, and the ensuing two some time in September, to continue so long as mutually agreed on, in consideration of exclusive professional services as star, and no effort was made by such parties to carry out the contract, which they gave notice they would not perform before the beginning of the first season, it was a question for the jury whether the term "season" was used to designate the customary theatrical season of thirty weeks.

2. SAME—PAROL EVIDENCE.
    Parol evidence was admissible to show what the parties intended by the word "season."

Appeal from trial term, New York county.

Action by Burr W. McIntosh against Henry C. Miner, Jr., and others, as executors of the last will of Henry C. Miner, deceased, and another. From a judgment in favor of defendants, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

George W. Miller, for appellant.
Gordon T. Hughes, for respondents.

McLAUGHLIN, J. This action was brought to recover damages ·for the breach of the following contract:

"Memorandum of agreement made and entered into this 1st day of February, 1896, by and between Henry C. Miner and Joseph Brooks, of the city of New York, party of the first part, and Burr McIntosh, of the same place, party of the second part, witnesseth, that the said parties, for and in consideration of the sum of one dollar in hand paid by each of the parties hereto to the other, the receipt whereof is hereby acknowledged, and for other valuable considerations, agreed to and with each other as follows: First. The said parties of the first part shall and will assume the management of the party of the second part as a star in a theatrical company to be organized by them for the seasons of 1896–1897, 1897–1898, 1898–1899, on the terms and conditions hereinafter named, and the said party of the second part shall and will render services as star under said management and in said company on the said terms and conditions. Second. Said party of the first part shall and will render and perform all such services as are usually performed by managers of first-class attractions, and shall and will give their time, skill, and attention

to the same. Third. The said parties of the first part shall and will pay $100 a week to the said party of the first part as compensation for his services, which payment shall be made on Saturday of each and every week; and, as further compensation, the said party of the second part shall receive a sum equal to 25% of the net profits made by the said enterprise for the first season, and 35% of the ensuing two seasons. Said net profits shall be paid to the party of the first part as follows: The first $5,000 (five thousand dollars) made during each of said seasons shall be retained by the said parties of the first part until the end of the season, as a fund out of which any losses that may accrue during said seasons may be paid, and whenever losses are paid from said fund the same so drawn shall be returned out of any profits thereafter made. After said $5,000 (five thousand dollars) are thus reserved, the profits of each week shall be divided between the said parties as herein provided. At the end of each season the said $5,000, or whatever part thereof shall remain on hand, shall be divided between the parties hereto as herein provided. Fourth. The parties of the first part shall deliver to the said parties of the second part a box-office statement at or before the close of each performance, and at the end of each week a statement of the expenses and receipts during said week. Fifth. The parties of the first part shall and will keep proper books, in which all transactions of the business shall be properly entered; and the party of the second part shall at all reasonable times have free access to said books, vouchers, etc., and the right to make and take extracts therefrom. Sixth. The first season under this agreement shall commence some time in the month of November, and the two ensuing seasons some time in the month of September, and shall continue as long as the same may be mutually agreed upon. Seventh. The parties of the first part shall engage the members of the company, make the route, and select the plays that are to be performed by the said company. Eighth. The party of the second part shall not render professional services from the first of November, 1896, to the first day of July, 1899, either on his own account or for any other person, anywhere in the United States or any foreign country, excepting in the state of Nevada, U. S., without the written consent of the parties of the first part; it being understood that the services of said party of the first part are unique and extraordinary, and that his place cannot be supplied by said parties of the first part. Ninth. Said parties of the first part shall pay the railroad fares of the party of the second part and his valet, and the same shall be charged as an expense of the business.

"In witness whereof, the parties hereunto set their hands and seals the day and year first above written.

"In presence of            H. C. Miner.     [Seal.]
                           "Jos. Brooks.      [Seal.]
                           "Burr W. McIntosh.   [Seal.]"

The plaintiff alleged, in substance, that he performed all of the conditions of the contract on his part to be performed, and demanded from time to time that the defendants perform on their part, which they wholly neglected and refused to do. The defendants answered separately, and each, in substance, admitted the execution and delivery of the contract, but alleged that, by the terms of the sixth clause, "no term of duration of any of the said seasons had ever been agreed upon between the parties to the said contract," and, as a separate defense, that the plaintiff voluntarily agreed to cancel and annul the said contract for the sum of $400, which had been duly tendered to him. Upon the trial the execution of the contract was admitted, and it was not there disputed that neither Miner nor Brooks supplied the plaintiff with any play, nor did they engage a company for him, or carry out the contract in any respect, but, on the contrary, they notified the plaintiff, the last of October or first of November, 1896, that they would not perform on their part,

notwithstanding the fact that he was then, and at all times thereafter, ready and willing to do so, and requested that they perform. It also appeared that a theatrical season, according to a well-settled custom and usage in the profession, consisted of at least 30 weeks. At the close of plaintiff's case the defendants moved to dismiss the complaint upon the ground that the contract entered into between the parties could not be resorted to for the purpose of subjecting the defendants to liability, inasmuch as its sixth clause was so indefinite as to term that it could not be enforced. The motion was granted, and judgment thereafter entered to this effect, from which the plaintiff has appealed.

It is urged by the respondents' attorneys that the judgment must be affirmed because this court, on the former appeal (37 App. Div. 482, 55 N. Y. Supp. 1074), in reversing the judgment, construed the contract, and the construction then put upon it is the one adopted by the trial court. This court upon the former appeal did not hold that the contract was so indefinite that it could not be enforced, nor was any intimation given to that effect. All that we held was that, on the facts as then presented, the plaintiff was not entitled to recover. We said:

"We have, therefore, a contract whereby the defendant agreed to act as manager for the plaintiff, and to pay him $100 a week for a season, the duration of which was to be determined by a subsequent agreement. No such agreement was made, and no evidence was produced to show that there was a custom or usage in the profession to which the parties belonged by which a season was understood to be any particular period."

It is true, the plaintiff then attempted to show that there was a custom known and well understood in the theatrical profession, as to the length and duration of a season, but he did not succeed in so doing. On the last trial, however, it appeared, and the fact was not contradicted, that a theatrical season, according to a well-settled custom and usage, consists of at least 30 weeks. This fact having been made to appear, we think a question of fact was then presented, which should have been submitted to the jury, viz. to determine whether or not, under all of the terms of the agreement, the parties did not contract with reference to that custom. It is a well-settled rule that in construing a contract every provision in it must be considered. In other words, it must be considered as a whole. Here the defendants cannot take the sixth clause of the contract, which reads, "The first season under this agreement shall commence some time in the month of November, and the two ensuing seasons some time in the month of September, and shall continue as long as the same may be mutually agreed upon," and insist that because no term of duration is fixed for the season, in this clause, the contract cannot be enforced. The proper construction to be given to this clause can only be determined by considering it in connection with all of the other provisions of the contract, and when this is done it seems to us, as already indicated, that it was a question for the jury to determine whether or not the parties did not contract with reference to the season as understood among the theatrical profession, and, when they used the word "season," whether they did not

65 N.Y.S.—47

have in mind a theatrical season of at least 30 weeks' duration, and so much longer as the parties at the expiration of the season might "mutually agree upon." This view is sustained in some respects, at least, by the first clause, which bound the plaintiff to act as a star performer, and the defendants to manage, select plays, companies, routes, etc., "for the seasons of 1896–1897, 1897–1898, 1898–1899." In other words, it is expressly provided by this provision that the season shall commence the first year in October, 1896, and extend into the year 1897, and in the year 1897 shall commence in September and extend into the year 1898, and in the year 1898 shall also commence in September and extend into the year 1899. And it is strengthened when the first and sixth clauses of the contract are read in connection with the eighth clause, which bound the plaintiff to play solely for the defendants "from the first of November, 1896, to the first day of July, 1899, * * * excepting in the state of Nevada, U. S., without the written consent of the parties of the first part; it being understood that the services of the said party of the first part are unique and extraordinary, and that his place cannot be supplied by the said parties of the first part." If we are right in this, then it necessarily follows that the word "season," as used in the sixth clause of the contract, was ambiguous, and parol evidence was admissible for the purpose of showing what the parties intended. Parol evidence is always admissible when doubt arises upon the face of an instrument either as to its meaning as a whole, or as to the meaning of any particular words used in it,—not for the purpose of enabling the court "to hear what the parties said," but to enable it to understand what they wrote, as they understood it at the time. Newhall v. Appleton, 114 N. Y. 140, 21 N. E. 105, 3 L. R. A. 859; Hart v. Thompson, 10 App. Div. 187, 41 N. Y. Supp. 909.

We are, therefore, of the opinion that the learned trial justice erred in dismissing the complaint; and for that reason the judgment must be reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.