(55 App. Div. 607.)

HEISEL v. VOLKMAN et al.

(Supreme Court, Appellate Division, First Department.   December 7, 1900.)

SALE—CONSTRUCTION OF CONTRACT.

      Defendant, desiring to purchase chewing gum, wrote to plaintiff, asking for "prices for supplying our requirements"; stating that he estimated his yearly requirements at from 5,000,000 to 10,000,000 pieces, was sure that they would not be less than the smaller amount, and offered to make a yearly contract if prices suited.   Plaintiff replied that he would make a yearly contract for from 5,000,000 to 10,000,000 pieces at a price stated, wrappers to be furnished by defendants.   Defendants accepted the proposition, and stated that they had ordered 5,000,000 labels for the wrappers. Pending delivery, plaintiff wrote, asking whether defendants would use the entire 10,000,000 pieces, and, if not, to give him a definite idea of how much over 5,000,000 they were liable to use, as he desired to protect himself by buying chicle to cover the contract.   Defendants replied that they were not prepared to decide whether they would use the entire 10,000,000, or how much over 5,000,000 they would use.   Later, defendants wrote stating that certain wrappers had been sent, and that "this is all that we have left, and ought to complete the 5,000,000 labels."   *Held*, that defendants were bound to accept at least 5,000,000 pieces.

Action by Charles T. Heisel against John H. Volkman and others. There was a judgment for defendants, and motion for new trial on exceptions was ordered to be heard in the first instance at the appellate division.   New trial granted.

The complaint alleges a contract whereby the plaintiff agreed to sell to the defendants 50,000 boxes (5,000,000 pieces) of chewing gum, of which 43,200 boxes were delivered, leaving 6,800, which the defendants refused to accept. Judgment is asked for $1,943.66, the amount due on the undelivered boxes. The answer denies that 5,000,000 pieces were contracted for, and states that the quantity delivered by the plaintiff was furnished upon defendants' request for such amount of chewing gum as they should require within one year.   The question thus presented is as to the terms of the contract entered into between the parties.   This contract is to be determined from correspondence beginning September 10, 1892, when the defendants wrote to the plaintiff asking for "prices for supplying our requirements," saying: "We estimate our yearly requirements at from five to ten million pieces.   Are confident that they will not be less than the smaller amount, and reasonably certain that they will come up to or exceed the larger one.   If your prices and goods suit, we are willing to make a yearly contract with you by which we pay spot cash on receipt of goods.   Deliveries are to be made weekly, and extend right through the year."   In reply to this inquiry, the plaintiff wrote: "I would be willing to make a yearly contract with you for from five to ten million pieces * * * at twenty-eight cents per one hundred pieces. Terms, net cash upon receipt of gum.   Wrappers to be gummed and furnished by you.   Regular weekly shipments to be made right through the year."   The next two letters related to a reduction in the size of pieces, the plaintiff agreeing to make a corresponding reduction in price, and concluding:   "I have often refused, and never yet have manufactured, any goods for any one except under my own name; but I expect you will use considerable quantity, and I do not feel that it will interfere in any way, and therefore solicit your commands."   The defendants then wrote:   "We will accept your proposition to supply us a year's requirements of chewing gum at the prices mentioned, with the condition that the transaction is to remain confidential, and that the origin of the goods is not to appear on the cases.   * * *   We have ordered five million labels, and expect to be able to send you a supply of them by the end of next week."   The shipments thereupon began, and the next communication from plaintiff, dated December 19, 1892, asks:   "Will you use the entire ten million sticks?   If not, can you give me a definite idea of how much over five million you are likely to use?   Chicle is advancing rapidly, and I de-

sire to protect myself as far as possible by buying chicle to cover your contract." The defendants replied December 23d: "With regard to your question whether we will use the entire ten million 'Cinderella,' or how much over five million, we are not prepared to decide on this point at the present time, owing to the fact that we started at the worst season of the year, and therefore cannot make a proper estimate." The defendants again write March 11, 1893, saying that certain wrappers had been sent, and that "this is all that we have left, and ought to complete the five million labels." On September 28th plaintiff wrote: "We have 8,300 boxes still to deliver on our contract, and, as we are about out of wrappers, I would request you to hurry them on. The year will be up on October 12, 1893, and we are ready to deliver the balance by that time." To this letter the defendants replied: "We are somewhat at a loss to understand what you mean when you say that you have still 8,300 boxes to deliver on your contract. Your contract was to deliver us our requirements for one year, which, as you state, is up on the 12th of October, and when that time arrives we desire you to stop shipments. * * * We would just as soon stop now." The plaintiff answered that he would insist on the 5,000,000 pieces, as stated in his proposition and accepted by the defendants. Upon the conclusion of the plaintiff's case the court granted the motion to dismiss the complaint, and it is upon the exception taken thereto that the question of law as to the contract made between the parties is before us.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

Antonio Knauth, for plaintiff.
Charles P. Rogers, for defendants.

O'BRIEN, J. The rule is unquestioned that, to establish a contract through the medium of correspondence, there must be sufficient from which a definite agreement can be inferred, and that, where the minds of the parties have not met upon a definite proposition, no valid contract is created. The formulation of the rule is simple; but its application to particular facts is at times difficult, owing to the different views which may be taken of the force to be attributed, or the construction to be given, to the language used in the correspondence. Language, however, which to some extent may be ambiguous or obscure, can often be made certain by reference to the intent of the parties, the purpose sought to be effected, and the means employed to that end.

Here, what the defendants wished was to secure at a low price a contract for the supply of the chewing gum they would require for the year, and to obtain this they wrote to the plaintiff asking for prices at which the gum would be furnished, giving an estimate of their yearly requirements, which, they stated, would not be less than 5,000,000 pieces. It was upon the data thus furnished that the plaintiff made his proposal, fixing the prices accordingly, for a yearly contract to supply not less than 5,000,000 pieces. This proposal the defendants accepted, and all that was indefinite, either as to the terms of the proposal or the acceptance, was whether the yearly requirement would exceed the minimum amount named (5,000,000 pieces), and reach the defendants' expectation, that it might be 10,000,000 pieces or over. In their first letter to the plaintiff the intent was clearly expressed that what the defendants sought was a price based upon a yearly contract for a minimum amount,

which price was to be considered, in connection with the probability that the requirement for the year would be double that amount. That the plaintiff so understood the proposal appears from his letters, and that the defendants acquiesced in this understanding is evidenced, among other things, by two facts, which we think are controlling. One is that they agreed to furnish plaintiff with 5,000,000 wrappers or labels for the minimum amount stated; and the other, that when their attention was specifically called, during the life of the contract, to the fact that plaintiff desired to know "how much over 5,000,000" pieces they would require in order that he might, on satisfactory terms, buy the chicle used in manufacturing the gum, the defendants replied that at that time they were unable to say how much more than 5,000,000 pieces they would need. It would be in the highest degree inequitable and unjust to permit the defendants to obtain the full benefit of the low prices given them, and be relieved of the obligation to take the quantity upon the assurance of accepting which the low prices had been secured. We have a right to assume that the defendants did not intend to deceive or mislead the plaintiff to his injury; and yet, if the construction which they now seek to place upon the correspondence is upheld, that result would follow, because it is certain that the plaintiff thought, as he was justified in thinking from the letters and acts of the defendants, that in determining the prices at which he would supply the gum asked for by them and in making shipments he could rely upon a contract for at least 5,000,000 pieces.

This case, we think, is clearly distinguishable from that relied upon by the respondent, of Barrow Steamship Co. v. Mexican Cent. Ry Co., 134 N. Y. 15, 31 N. E. 261, 17 L. R. A. 359. There the parties negotiated by letter for the transportation by plaintiff of a party of pilgrims from New York to Rome. In answer to a letter from defendant's agent, which stated that there would probably be 250 or more in the party, the plaintiff's agent wrote, "We beg to confirm the understanding between us," which the letter stated, in substance, to be that defendant would ship not less than 250. The letter closed, "Please confirm this, and oblige." Defendant's agent replied, accepting the rates offered, and adding: "There is a probability that the party will exceed two hundred and fifty, but I have not been furnished with the exact number of each class." The number furnished by defendant was 134, and it was held that no binding contract for at least 250 had been made. In that case, it will be seen, the defendant never made a direct representation of the number, but stated the probability, and added that the exact number had not been furnished; and, as shown by the correspondence, the defendant was relying upon information derived from an outside source, and did not bind itself with respect to any definite number, but was speaking all the time of a probable number. Here, however, the defendants were speaking of the requirements of their own business, of which they must be presumed to have definite information, and made a representation, which was in no way indefinite or ambiguous, as to the minimum amount of chewing gum they would need during the year. And, in confirmation of the fact

67 N.Y.S.—18

that the contract should be based upon the minimum amount of 5,000,000 pieces, they undertook, on their part, to supply wrappers for that number. We think, therefore, that the court erred in dismissing the complaint at the close of the plaintiff's case upon the ground that the correspondence did not show that there was any definite agreement upon the part of the defendants to take at least 5,000,000 pieces of chewing gum. The other question, as to the measure of damages and the condition of the gum, it is unnecessary for us to consider, for the reason that the error made in dismissing the complaint upon the ground stated requires that there be a new trial.

Motion for a new trial accordingly granted, with costs to the plaintiff to abide the event. All concur.