NICHOLAS PALLETTE et al., Copartners under the Name of PALLETTE & SANTOS, Appellants, v. STATE OF NEW YORK, Respondent.

(Claim No. 25089.)

Third Department, June 30, 1943.

_George H. Rothlauf_ (_Russell G. Hunt_ of counsel), for appellants.

_Nathaniel L. Goldstein, Attorney-General_ (_Burns F. Barford_ and _Harold S. Coyne_ of counsel), for respondent.

BLISS, J. Appellants contracted with the State to erect over the West Shore Railroad at Catskill a steel bridge supported by ten concrete piers and two concrete abutments, which in turn rested on cast-in-place concrete piles. They claim that they were compelled to drive these piles to bearing loads far in excess of those required by the contract, to furnish excessive piling lengths and sizes and were unreasonably delayed by the State in the performance of the contract.

The legend " normal pile load does not exceed 10 tons per pile " appeared in the notes on both the plans and the itemized proposal. At three separate places in the instructions to bidders and the plans it was stated that the standard specifications applied except as modified on the plans or in the itemized proposal and special attention was directed to the notes on the plans which were made a part of the contract and " which may alter or revise the standard specifications for this particular contract." It was there further stated that all the work was covered by the specifications " except as modified on these plans and in the itemized proposal."

In spite of all these contract provisions the State compelled the appellants to drive the piles to bearing loads ranging from twenty-five and three-tenths tons up to seventy-seven tons. It now attempts to justify this extra requirement under the general provisions of the contract that the contractors acknowledged that they were fully informed as to all conditions affecting the work, that the State might make necessary changes in the provisions in the specifications and that in cases where loading tests were not required all piles should be driven to whatever depths ordered by the engineer. In our opinion these general provisions of the contract and specifications are not a good defense. The notes on the plans and the proposal controlled over the general contract and specifications. Both the instructions to bidders and the plans so provided. Consequently the State may not now contend that the specifications and general contract provisions, which were customary in all contracts, could take precedence over the plans for this particular job, especially in the face of direct statements to the contrary contained on the plans and in the instructions. The contractors were entitled to rely upon the statement in the plans and proposal that the normal pile load would not exceed ten tons per pile. Under no possible interpretation of the documents which went to make up the contract could the State require that the piles were to be driven to a bearing load seven times that required by the plans. " The positive representations of the plans which refer only to the particular work involved, take precedence over specifications applicable to all contracts or the general terms of a uniform contract form." (*Young Fehlhaber Pile Co., Inc.,* v. *State of New York,* 265 App. Div. 61.)

Pursuant to written instructions from the State the contractors purchased steel pile shells of the lengths therein specified, all of a gauge usual in work of this kind and satisfactory to the State. These piles proved unable to stand the strain of being driven to the increased bearing loads and the State then ordered the contractors to furnish another type of shell of a heavier gauge. These latter shells could not be driven to full lengths and an average of ten feet had to be cut off from each pile. The claimants contend that they were thus required to violate the contract and seek damages for the cost of the steel pile shell cut-offs. Payment under the contract was made on the basis of the linear feet of the piles in place. There is no proof that the list of piles to be purchased submitted by the State was erroneous or excessive or that reasonable care was not used in its compilation. It is apparent that the parties under the contract contemplated that there would be variations

in the number of feet in depth to which the piles could be driven and that some cut-offs would be necessary regardless of the bearing loads to which the piles were driven. Consequently the contractors have not established this item of their claim.

Claim is made for the delay caused by the State in failing to inform the contractors within a reasonable time as to the sizes of piles to be purchased and in demanding that the piles be driven to greatly increased bearing loads. The contractors rented the piling equipment on a daily basis and these delays caused them considerable additional expense for which they are entitled to be compensated. Also, the State was not entitled to assess the contractors for such delay by a deduction which it made for delay in completion.

The judgment should be reversed, and judgment granted to appellants in accordance with the foregoing opinion.

All concur.

The court reverses the following findings of fact: Nos. 19, 23, 30, 31, 32, 33, 34, 36, 37, 38, 39, 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 53, 54, 55 of the decision.

Nos. 7, 10, 11, 17, 19, 21, 22, 23, 24, 25, 26, 28, 29, 30, 31, 32, 33, 35, 37, 38, 39, 40, 41 and 42 of the State's requests to find.

The court disapproves the following conclusion of law: "First" of the decision. II and III of State's conclusions of law.

The court makes the following findings of fact: Nos. 6, 9, 10, 18, 22, 25, 30, 31, 33, 34, 35, 36, 37, 38, 39, 40, 42, 43 except as to the delay referred to in finding No. 41 and the damage sustained was $1,005 instead of $1,035, No. 44 except that the delay was thirty-three and one-half days instead of thirty-four and one-half and the loss was $837.50, instead of $862.50, 45, 46, 47, 49, 50, 51 except that the amount of overhead is $122.64 instead of $128.51 and the interest is $257.54 instead of $269, 52 of claimants' requests to find.

The court concludes that claimants are entitled to judgment against the State of New York for $8,950.56 damages, with interest thereon at six per cent per annum from December 29, 1936, to July 1, 1939, and at four per cent per annum from July 1, 1939, to the date of the entry of judgment, with costs.

The judgment of the Court of Claims is reversed on the law and facts, and judgment is granted in favor of appellants against the State for the sum of $8,950.56, with interest thereon at six per cent per annum from December 29, 1936, to July 1, 1939, and at four per cent per annum from July 1, 1939, to the date of the entry of judgment, with costs.