RICHARD T. FRYE et al., Copartners Doing Business under the Name of FRYE Co., Claimants, *v.* STATE. OF NEW YORK, Defendant. (Claim No. 28274.)

Court of Claims, April 7, 1948.

*Samuel L. Greenberg* for claimants.

*Nathaniel L. Goldstein, Attorney-General (Douglas S. Rider* and *Burns F. Barford* of counsel), for defendant.

LAMBIASE, J. On the 27th day of June, 1945, claimants entered into an agreement with the State of New York in which, for the sum of $20,335, they agreed to furnish the material and perform the labor required and necessary for " Sanitary Work, Replacement of Roof Conductors, as shown on the drawings or specified, at the Capitol, Albany, New York, in accordance with Specification No. 12424 and Addendum No. 1 dated May 18, 1945 ". (Agreement, page 1.) The claimants thereafter duly entered upon the performance of said contract, and of all of the terms, covenants, and conditions on their part to be performed thereunder, and duly completed all of the work and furnished all of the materials called for and required under the terms thereof. Due to certain changes or alterations, not in controversy, the final certificate under the contract was issued in the amount of $19,993.35 upon which the State has paid to the claimants the sum of $18,350, leaving the sum of $1,643.35 due and owing to the claimants under said final certificate.

Said contract having been completed by claimants and the work thereunder having been accepted by the State of New York, pursuant to the contract a final certificate was issued authorizing the payment by the State of said sum of $1,643.35. Payment of said sum was not made to claimants, however, because they refused to accept said amount except upon condition of their reserving their right to file a claim in the Court of Claims for damages sustained by them by reason of a breach of said contract which they claim had been made by the State of New York. Claimants justify their position in this respect because the contract contains the following provisions: " The acceptance by the contractor of the last payment on this contract as hereinbefore provided, shall be and shall operate as a release to the State of New York and each official, agent, representative and employee thereof, from all claim and liability to the contractor and all sub-contractors for anything done or furnished for or relating to the work, or for any act or omission of the State of New York, its officials, agents, representatives or employees, relating to or affecting the work, except only the claim against the State of New York for the remainder, if any there be, of the amounts kept or retained as

provided in this contract.'' (Page 3.) The State refused to make said payment under said condition, and said sum of $1,643.35 remained unpaid at the time of the trial. There is no controversy as to claimants' right to this amount which they have set up as a First Cause of Action in their claim herein. We find, therefore, that claimants are entitled on said First Cause of Action to an award in the sum of $1,643.35.

Included in claimants' claim is a Second Cause of Action which reads as follows:

'' 12. That in the performance of said contract claimants were ordered and directed by the State of New York, its agents, servants and employees, and over the protests of the claimants and contrary to the terms and requirements of the said contract and specifications, to use and install drainage screwed fittings in place and stead of standard weight cast iron fittings.

'' 13. That in the performance of said contract claimants were ordered and directed by the State of New York, its agents, servants and employees, and over the protests of the claimants and contrary to the terms and requirements of said contract and specifications, to furnish material and perform labor in the extension of conductors to heights not shown on the plans and specifications.'' For the purposes of convenience we designate herein as '' A '' that part of claimants' Second Cause of Action which is set up in paragraph twelve of the claim, and as '' B '' that part thereof which is set up in paragraph thirteen thereof. We now discuss them in that order.

*As to subdivision '' A '' Second Cause of Action:* It is the contention of the claimants that they are entitled to an award under this item because the State of New York compelled them to furnish and install '' screwed '' fittings instead of '' caulked '' fittings, although the agreement, the proposal, the general conditions, the drawings and specifications comprising the entire contract herein do not specifically so stipulate. They urge that their bid was made upon the basis of '' caulked '' fittings, and that they were entirely justified in so doing within the requirements of said agreement, proposal, general conditions, drawings and specifications. They assert that they are entitled to and ask for under this item of their claim the sum of $1,044.08 for materials, and $4,725 as labor (both amounts adjusted on the trial), being the extra cost for said items incurred by them by reason of having been compelled by the State to furnish '' screwed '' fittings instead of '' caulked '' fittings.

It is conceded by the parties hereto that the contract in question does not specify either " caulked " or " screwed " fittings. The specifications on this point state only the following:

" Pipe

" New conductor piping shall be of galvanized extra strong mild steel pipe with standard weight cast iron fittings ". (Specification No. 12424. Sheet C-1.)

In fact, the Attorney-General stated the issue succinctly on this matter of fittings when he said (S. M. 87): " The specification is not only silent with respect to screwed fittings but it's also silent with respect to caulked fittings. The claimant is contending here that it calls for caulked fittings and we say that it doesn't, it calls for screwed fittings ". Obviously the Agreement, Proposal, General Conditions, Drawings and Specifications in evidence could have been made more certain on this point by the use of proper language.

In construing the contract in question, the same rules of construction are applicable as between individuals. (Jackson v. State of New York, 210 App. Div. 115, affd. 241 N. Y. 563; People ex rel. Graves v. Sohmer, 207 N. Y. 450, reargument denied, 208 N. Y. 581) and cases cited therein. If the language used is capable of more than one construction, the court must resolve all doubts against the person who uses the language and most beneficially to the promisee. And in such case, though the words used cannot be said in a strict sense to be the words of one party any more than of the other, still the party preparing the instrument, having chosen the words employed in the writing, must be held to a strict interpretation of them rather than the other party who merely accepts them; and if there is doubt as to the meaning, the party preparing the instrument is responsible for it as the language is wholly his own. " The reason of the rule ", says MARTIN, J., " that the language of an instrument is to be construed against the person who proposes it rather than against the person who is invited to accept it, is that men are supposed to take care of themselves, and that he who chooses the words by which a right is given, ought to be held to the strict interpretation of them, rather than he who only accepts them ". (Gillett v. Bank of America, 160 N. Y. 549, 555.)

The State prepared the entire contract herein on its own forms, and all reasonable doubts as to the meaning thereof are to be resolved against it, as it is responsible for the language used and the uncertainty thereby created. (Moran v. Standard

*Oil Co. of N. Y.*, 211 N. Y. 187; *Bintz* v. *City of Hornell*, 268 App. Div. 742, affd. 295 N. Y. 628, and cases cited.) Such, therefore, is the rule of construction to be applied by us in our consideration of the instant contract.

The State claims herein (a) that " standard weight cast iron fittings " under the agreement and specifications herein must be " screwed " fittings, because to use " standard weight cast iron caulked fittings " on steel pipe leaves insufficient room in the bells to properly caulk the joints; and (b) that the custom or usage of the trade calls for " screwed " fittings under the pipe specifications herein, of which custom and usage the contractor had knowledge or was presumed, by reason of his experience, to have knowledge. It urges that the record establishes the foregoing.

Certainty is an essential element in all contracts, otherwise it is impossible to determine as to what the parties have agreed. The fact that extrinsic evidence must be resorted to to remove a latent ambiguity or obscurity, will not render the contract invalid (*McIntosh* v. *Miner*, 53 App. Div. 240; *Fish* v. *Hubbard*, 21 Wend. 651; *Lent* v. *Hodgman*, 15 Barb. 274; *Newhall* v. *Appleton*, 114 N. Y. 140; *Hart* v. *Thompson*, 10 App. Div. 183; *Barnard Bakeshops* v. *Dirig*, 173 Misc. 862), nor will the use of an indefinite phrase, if it can be given a reasonable and just limitation, when taken in connection with the subject matter of the contract. So language which to some extent may be ambiguous can often be made certain by reference to the intent of the parties, the purpose sought to be effected, and the means employed to that end. (*Heisel* v. *Volkmann*, 55 App. Div. 607.)

Every legal contract is to be interpreted in accordance with the intention of the parties making it, and custom or usage (with the limitations hereinafter noted), when it is reasonable, uniform, well-settled, not in opposition to fixed rules of law, not in contradiction of the express terms of the contract, is deemed to form a part of the contract and is deemed to enter into the intention of the parties. Parties are held to contract in reference to the law of the State in which they reside, for all men, being bound to know the law, are presumed beyond dispute, to contract in reference to it. And so they are presumed to contract in reference to the usage of the particular place or trade in or as to which they enter into agreement, when it is so far established and so far known to the parties that it must be supposed that their contract was made in reference to it. Evidence of usage is received when a written contract is under

consideration to explain expressions used in a particular sense, by particular persons, as to particular subjects, to give effect to language in a contract as it was understood by those who made use of it. (*Walls* v. *Bailey*, 49 N. Y. 464; *Rickerson* v. *Hartford Fire Ins. Co.*, 149 N. Y. 307; *Fox Film Corp.* v. *Springer*, 273 N. Y. 434; *Gravenhorst* v. *Zimmerman*, 236 N. Y. 22.) Usage or custom may also render sufficiently certain a phrase otherwise indefinite in its meaning (*McIntosh* v. *Miner, supra*), and may explain and make definite a writing otherwise vague and of doubtful meaning. (*Stulsaft* v. *Mercer Tube & Mfg. Co.*, 288 N. Y. 255.)

A party, however, cannot be bound by usage unless he [1] either knows or has reason to know of its existence and nature. Accordingly, one who seeks either to define language or to annex a term to a contract by means of usage must show either that the other party is actually aware of the usage, or that the existence of the usage in the business to which the transaction relates is so notorious that a person of ordinary prudence in the exercise of reasonable care would be aware of it. If so notorious, actual knowledge of it is immaterial.

It is a question of fact whether a party has reason to know that the other party intends his words or other acts to be governed by a usage. The burden of establishing that such is the case is on the party so asserting. Though the question is one of fact, the existence of usage, like other facts, may be so well known that a court will take judicial cognizance of it. (Restatement, Law of Contracts, § 247, comment b; *Walls* v. *Bailey, supra*; *Rickerson* v. *Hartford Fire Ins. Co., supra*.) Usage is a matter of fact, not of opinion, and it is to be established or negatived in all its essentials, as well as to knowledge as to any other, by the same character and weight of evidence as are necessary to maintain other allegations of fact. It may be established by presumptive, as well as by direct evidence. Nor, on the other hand, is it exempt from the difficulty that a presumption may not prevail as against direct evidence to the contrary of it. The jury may presume, from all the circumstances of the case, that knowledge or notice existed. (*Walls* v. *Bailey, supra*; *Rickerson* v. *Hartford Fire Ins. Co., supra*.)

Having in mind the preceding discussion, the admission herein of evidence of trade usage, which evidence was offered by the State, was proper under the circumstances, and we have considered and weighed it in arriving at our decision herein.

We are of the opinion, however, that the attempt of the State to establish the custom or trade usage hereinbefore referred to has fallen far short of the mark required by the cases. No custom or trade usage was shown herein with the strength or clarity which the rules relating to custom or trade usage require. (*Gravenhorst* v. *Zimmerman, supra*; *Walls* v. *Bailey, supra*; *O'Donohue* v. *Leggett*, 134 N. Y. 40; *Fairchild Engine & Airplane Corp.* v. *Cox*, 50 N. Y. S. 2d 643; *Wise & Co., Inc.,* v. *Wecoline Products, Inc.*, 286 N. Y. 365.)

As to the contention of the State that standard weight cast iron fittings under the specifications herein must be screwed fittings because to use standard weight cast iron caulked fittings on steel pipe leaves insufficient room in the bells to caulk the joints, there is uncontradicted evidence in the case to the effect that two such "caulked" joints were made and installed by claimants' employees during the course of the work under the instant contract, and apparently were inspected, passed, and accepted by the State's inspector stationed on the job. Furthermore, there is proof in the record that claimants and their employees at other times and on other contracts had made and installed caulked fittings under circumstances similar to those of the instant case. We are of the opinion that the State has not established its contention hereinbefore mentioned by a fair preponderance of the credible evidence.

We are, therefore, of the opinion that claimant is entitled to an award in the adjusted amount of $1,044.08 for material, and in the adjusted amount of $4,725 for labor, making in all the sum of $5,769.08, under what we have designated herein as their Second Cause of Action, subdivision "A", set forth more particularly in paragraph twelve of the claim herein.

*We come now to a consideration of what we have designated herein as claimants' Second Cause of Action subdivision "B", more particularly set forth in paragraph thirteen of claimants' claim:* This item involves extra work and materials in extending conductors numbers twelve, thirteen, fourteen and fifteen, which conductors are shown on contract plans 44/3019. (Claimants' Exhibit 16, also State's Exhibit A.) It is the claim of the claimants with reference thereto that instead of their having to connect said conductors at floor levels as they contend the plans indicate to them, they actually had to connect conductors numbers twelve and thirteen at a distance of thirteen feet above the floor level, and conductors numbers fourteen and fifteen at a distance of thirty-five feet above floor level. The State asserts

that the plans, specifications, and agreement requirements made it necessary for claimants to connect these conductors "to metal tubes or gutter as required", i.e. at whatever heights they existed. A note appears on claimants' Exhibit 16, also State's Exhibit A, at or near each of these numbered conductors reading: "Connect to metal tube or gutter as required". We are satisfied that claimants' position with reference to this part (subdivision "B") of their second cause of action, amounting to $1,574.18 is untenable and must be and hereby is dismissed on the merits.

Claimants are, therefore, entitled to an award against the State herein in the sum of $1,643.35 on their first cause of action; and they are further entitled to an award in the sum of $5,769.08, plus 10% overhead and 10% profit (General Conditions, art. 29, par. 135) on said latter sum, against the State of New York on that part of their second cause of action which we have designated herein for the purposes of convenience as subdivision "A", the total award under subdivision "A" being in the sum of $6,980.59; and making a total award herein under both claimants' first cause of action and under subdivision "A" of their second cause of action in the sum of $8,623.94, together with interest thereon from the 30th day of July, 1946.