Alexander Del Giorno, J.
The claimants, who operate a nursery and retail flower business, have filed two claims for damages sustained as a result of the destruction of crops, plants, flowers and tubers as well as damages to the land and buildings owned by them because of flooding and erosion from the shoulders and embankment of a portion of the Thruway, Southern Westchester Connection, adjacent to the premises of claimants. It was stipulated that both claims would be tried together, but that separate judgments would be entered.
*699 In Claim No. 34995, the damages alleged to have been sustained amount to $20,000, and in Claim No. 35918 the alleged damage amounts to the sum of $1,000.
In Claim No. 34995, it is alleged that the gardens and the nursery area were flooded on a number of occasions by waters flowing down the unfinished embankment of the Thruway, with resultant silt and clay covering the fields, plants, shrubs, trees and bulbs, rendering such soil useless for cultivation and causing additional damage to the cellar of the barn, the driveways and the underground drainage system. In Claim No. 35918, the claim is for the value of flowers and bulbs which were destroyed.
Claimants allege that the State was (1) negligent in the building of the embankment, (2) maintained a nuisance and (3) committed various trespasses resulting in the damages alleged.
Although the State did not dispute by way of any direct testimony of its own the elements of damage, its cross-examination of the claimants and the claimants’ expert witnesses satisfy me that at best the damages sustained in Claim No. 34995 were $13,000 in all. The expert witnesses for the claimants did not convince me that the underground drainage system which consisted of a loose stone culvert, about 100 years old, was damaged to an extent requiring a complete removal and rebuilding to make it again operative. The testimony satisfies me that its prior condition was merely “ tolerable ”. Debris had been in the system before there was silt deposited therein. The silt now deposited therein was not the main reason for the alleged stoppage. At most, two or three man-sized openings along its length could have been made to clear the culvert, either by the use of a pressureized water hose or removal by hand. In my opinion, either of these methods would have cleared the culvert with very little expense. It may be recalled there that two branches of the culvert had been “ dead ” before the happening of the State’s alleged negligence or trespass.
The testimony and the photographs introduced into evidence amply sustain the claim made for the surface damage to the land, flowers, shrubs, etc., and the buildings.
Assuming, therefore, that the allowable damage in Claim No. 34995 is $13,000, the question arises as to whether the State, or the New York State Thruway Authority, or the contractor who built that portion of the Thruway is to be charged with the damages. The State contends that the high embankment was"built pursuant to a contract and that the contractor should be held liable for the damages claimed herein; additionally, the *700 State maintains that as to part of the damages which occurred after July, 25, 1956, the New York State Thruway Authority should have been joined as a defendant so as tó be answerable for those damages in the event that the contractor were held blameless.
The claimants assert, however, that the State had drawn the construction plans, had hired outside engineers to supervise the job and had its own engineer from the Department of Public Works whose job was to see that the work was being done according to the plans drawn by the State, and therefore, the State was the only proper defendant.
In order to choose between the positions of the claimants and the State, the contract must be interpreted and construed. The State claims that the building of a protective ditch or a swale at the toe of the embankment to prevent such damages as occurred here, is implied in the contract even though not specified and, therefore, the fault was the contractor’s and not the State’s; the claimants on the other hand, assert that the State should have seen to it that this was done, and for its failure to do so is liable for their resulting damage. The State makes the further point that its liability, if any, ended upon its acceptance of the contract work on July 25,1956, and that such liability thereafter was that of the Thruway Authority which should have been named a defendant.
The court rejects this contention of the State, and holds that the State drew the plans for and built the Thruway, and that its liability for resulting damage herein was continuing. This is true particularly because long after the damage occurred, the embankment in question was still in its raw, unfinished state, even though the roadway itself was finished. Additionally, there was no proof that the Thruway Authority had assumed any obligation under the contract to finish and pay for the balance of said contract after July 25,1956. As a matter of fact, the New York State Thruway Authority did not file a certificate of assumption of jurisdiction until November 25, 1957.
It may have happened that the paved portions were ready for use by July 25,1956, while the shoulders and embankments were to be finished at a later date, as they were, in accordance with the provisions of the contract. The Thruway Authority also may have collected tolls, as the agency contemplated by the law to manage the Thruway, but such action did not create an obligation on its part to assume the contract.
The State drew the plans as well as the contract for the construction of the Thruway, and the onus rests upon it to prove that the contractor knew or should have known, irre *701 spective of the fact that the contract and plans made no mention thereof, that ditches or swales were the proper thing to construct at the toe of the embankment to prevent flooding or the spilling of loose clay, silt and rocks upon the land of the adjoining owner. (Strauss v. Ernstein, 232 N. Y. 187; Aldrich v. New York Life Ins. Co., 235 N. Y. 214, 223.)
It is one thing to allege that, although the contract was devoid of any such provision, it was implied in the contract that the contractor should have built a large enough ditch or swale to avoid what happened here; it is another thing to prove that the contractor knew that such ditches were contemplated or implied in the contract, even though not specified therein. (McIntosh v. Miner, 53 App. Div. 240; see, also, Frye v. State of New York, 192 Misc. 260.) No such proof was adduced at the trial.
The positive representations of the plans, which referred only to the erection of the embankment without any reference to ditches or swales at the toe thereof, take precedence over surmise and over specifications which are applicable to all contracts. (Young Fehlhaber Pile Co. v. State of New York, 265 App. Div. 61; Pallette v. State of New York, 266 App. Div. 490, affd. 292 N. Y. 657.)
The court rejects therefore the contention of the State that it was the fault of the contractor, not the State’s, that such protective measure was not applied so as to prevent the spreading of the eroding clay, silt and debris from the embankment onto the property of the claimants.
It cannot be stated to or accepted by the court that the State was unaware of this type of happening. Rather, it is undoubtedly a common occurrence in all road construction where the grade is elevated for a great number of feet, such as here. What is puzzling to the court is the fact that the State should remain mute and fail to specify in its contract ditching at the toe of such embankment. This would be the only logical manner of preventing just what occurred here. To expect the contractor to read into a contract what is not in it is to expect the millennium, for it must be assumed that he did not figure it in preparing his bid.
The State submits that the filing of the notice of intention as to Claim No. 34995 on January 9, 1956 and the subsequent filing of the claim on October 4, 1957 was not timely, and that consequently the court is without jurisdiction. The claimants allege recurrent erosions and continuous covering of their property with the silt and clay from the embankments making it impossible to assess damages until the floodings had ended.
*702 The law is well settled that a claim for injury to crops and for the use of crop lands accrues during the crop season and is accrued at the end of the crop season. The statute does not begin to run until the injured property owner is in a position to ascertain the full extent of his damages. (Dufel v. State of New York, 198 App. Div. 97; Inkawhich v. State of New York, 22 N. Y. S. 2d 761; Kosciuszko v. State of New York, 15 Misc 2d 1009, 1012; Molinaro v. State of New York, 23 Misc 2d 938; see Taylor v. State of New York, 302 N. Y. 177, 185.) In a manner similar to a claim for the destruction of crops, the damages here could not be ascertained fully until the clay and silt stopped spreading upon the land of the claimants. The court finds that Claim No. 34995 accrued on October 15, 1955, that notice of intention to sue was timely filed and that this court has jurisdiction of the claim.
The court awards to the claimants the sum of $13,000 for damages sustained in Claim No. 34995, and $1,000 for damages sustained in Claim No. 35918, all of which will be reflected in the findings of fact and conclusions of law filed simultaneously with this memorandum decision.