GENERAL VENTURE CAPITAL CORPORATION, Respondent, *v.* WILDER TRANSPORTATION, INC., et al., Appellants, et al., Defendants.

First Department, July 7, 1966.

174

*Myron J. Wiess* of counsel (*Aranow, Brodsky, Bohlinger, Einhorn & Dann,* attorneys), for appellants.

*George H. Schwartz* of counsel (*David B. Manowitz* with him on the brief; *Schwartz & Frank,* attorneys), for respondent.

BASTOW, J. Plaintiff has been granted summary judgment on the first cause of action in its amended complaint and defendants' motion to dismiss the entire pleading has been denied. Three defendants appeal from so much of the order and judgment as granted plaintiff's cross motion for affirmative relief and denied appellants' motion to dismiss the first cause of action. Appellants further seek reversal of an order denying their application for leave to reargue the motion and cross motion.

Plaintiff is a Connecticut corporation licensed under the Small Business Investment Act of 1958. (72 U. S. Stat. 691; United States Code, tit. 15, § 681.) The corporate defendant (Wilder, Inc.) is a New York omnibus corporation possessing in 1962 a permit or license to operate as a common carrier issued by the Public Service Commission. (Public Service Law, § 2, subd. 29; § 53.)

On October 31, 1962 plaintiff and Wilder, Inc. entered into a loan agreement by the provisions of which plaintiff agreed to loan Wilder, Inc. $60,000 which could be refinanced at the option of Wilder, Inc. until September 15, 1968. Plaintiff was furnished various forms of collateral security, unnecessary here to detail with a single exception. Pursuant to paragraph V of the agreement plaintiff received from Wilder, Inc. warrants that expired on September 1, 1968 permitting the holder to subscribe for 75 shares of the common stock of Wilder, Inc. at a per share price of $133.33. Wilder, Inc. further agreed that upon notice by plaintiff of its intention to exercise any or all of the warrants it would petition the Public Service Commission for permission to issue common stock pursuant to the terms of the warrant.

Simultaneously with the execution of the loan agreement the individual defendants (not including Wagner) agreed in writing

with plaintiff that in the event the consent of the Public Service Commission for the issuance of the stock was not obtained within 90 days they would purchase the warrants plaintiff intended to exercise. The purchase price was fixed as the difference between $133.33 and the so-called "agreed valuation per share". Such agreed valuation was stated to be the greater of (1) book value per share as of the last day of the fiscal quarter immediately preceding the notice date and (2) 10 times the per share earnings of Wilder, Inc. for the last fiscal year immediately preceding the notice date.

On July 12, 1963 the basic loan agreement was modified to increase the amount of the loan from $60,000 to $70,000. Although defendant, Wagner, attorney for Wilder, Inc., had given plaintiff a written opinion, simultaneously with the execution of the loan agreement, that it and the notes were "binding obligations of the company" and no approval or order of any governmental agency was required "in connection with the execution, delivery or performance by (Wilder, Inc.) of the loan agreement," a question arose in late 1963 as to whether certain provisions of the agreement violated section 62 of Public Service Law which permits an omnibus corporation to issue notes or other evidences of indebtedness payable on demand or at periods of more than 12 months provided such action has been authorized by order of the Public Service Commission.

The issue was resolved by written amendment of December 19, 1963 to the loan agreement. This recited that modification had been requested by Wilder, Inc. so as to comply with section 62 of the Public Service Law. The provision of the basic agreement (Par. IIIk) by which, among other things, the maturity of the notes might extend to September 15, 1968 was eliminated. Substituted therefor was a provision extending the loan to September 15, 1964. The term of the warrants remained unchanged.

The loan was not paid on that date but plaintiff agreed to extend the loan for another year. Its attorney (Duffy) prepared a proposed amendatory agreement and sent it to defendant, Wagner, attorney for Wilder, Inc. The latter in response requested that the term of the warrants be shortened from September 1, 1968 to September 10, 1965. Wagner stated that the Public Service Commission had postponed action on granting permanent franchise rights to Wilder, Inc. because the warrants had a term in excess of one year.

The proposed agreement as drawn by Duffy provided that payment of the indebtedness was extended to September 15, 1965 and that the loan agreement, as amended, was to remain

in full force and effect as to all loans " and in full recognition of the loan extension made herein." As redrawn by Wagner the basic loan agreement, as amended, was further amended " so that the expiration date of the warrants heretofore delivered by [Wilder, Inc.] * * * is hereby modified and as so modified shall be deemed to correspond to and run concurrently with the loan extension made herein but in no event beyond September 10, 1965 ". It was further provided that the indebtedness " shall be extended to September 10, 1965, and said extension shall be evidenced by a promissory note " from Wilder, Inc. to plaintiff.

The agreement as redrawn by Wagner (and dated September 15, 1964) was executed by all parties on December 30, 1964. At the same time a promissory note of Wilder, Inc. to plaintiff in the sum of $70,000 payable on September 10, 1965 was delivered. The following day (December 31, 1964) the full amount of the loan with interest was paid.

The first cause of action of the amended complaint (upon which summary judgment has been granted) recited the foregoing facts and sought affirmative relief directing Wilder, Inc. to apply to the Public Service Commission for permission to issue 75 shares of its stock to plaintiff and upon such permission being granted to issue the shares to plaintiff. The judgment as entered implements this prayer for relief.

We find no merit in the contentions of defendants that the amendment agreement of September 15, 1964 may be construed to provide that the warrants and plaintiff's rights thereunder terminated upon payment of the loan or that there is any ambiguity in the language of the agreement that presents a triable issue. " It has long been the rule that when a contract is clear in and of itself, circumstances extrinsic to the document may not be considered (*General Phoenix Corp. v. Cabot,* 300 N. Y. 87) and that where the intention of the parties may be gathered from the four corners of the instrument, interpretation of the contract is a question of law and no trial is necessary to determine the legal effect of the contract ". (*Bethlehem Steel Co. v. Turner Constr. Co.,* 2 N Y 2d 456, 460.)

The pertinent provision of the agreement of September 15, 1964 is that " the expiration date of the warrants * * * shall be deemed to correspond to and run concurrently with the loan extension made herein ". The " loan extension " was provided for in the following paragraph and stated that " the indebtedness * * * shall be extended to September 10, 1965, and said extension shall be evidenced by a promissory note from [Wilder, Inc.] to [plaintiff], of even date herewith ".

The promissory note, as stated, was so dated and was payable on September 10, 1965. When these two provisions are read together it is clear and unambiguous that the expiration date of the warrants was to be coterminous with that of the date for the payment of the loan — September 10, 1965.

Furthermore, this is an appropriate case for application of the rule that where the "remaining doubt as to the proper interpretation is merely as to which of two possible and reasonable meanings should be adopted, the court will adopt that one which is the less favorable in its legal effect to the party who chose the words." (3 Corbin, Contracts, § 559, p. 262.) If, as appellants now contend, it was the intention of the parties that the warrants were to terminate on payment of the loan it could have been stated in so many words when the agreement was redrawn by counsel for Wilder, Inc. It was not so written but to the contrary the language used makes it plain that no such intent existed on the part of plaintiff and the agreement may not be so interpreted.

After summary judgment had been granted defendants moved for leave to reargue. Upon this application they contended for the first time in general language that the transactions between Wilder, Inc. and plaintiff violated the policy, spirit and regulations of the Small Business Administration Act. Upon appeal these broad allegations have been reduced to a contention that the warrants were illegal because of violations of certain specified regulations promulgated by the Small Business Administration. An intelligent understanding of these contentions requires a brief review of statute and regulations.

The statute authorized small business investment companies, such as plaintiff, to furnish two kinds of financial assistance to small business companies — equity capital and long-term loans. (U. S. Code, tit. 15, §§ 684, 685.) Equity capital may be furnished in accordance with the regulations of the Small Business Administration.* These regulations, so far as here material, define "equity capital" as funds received by a small business

---

* The Small Business Investment Act of 1958 as originally enacted provided that the sole method of furnishing equity capital was through the purchase of debenture bonds by an investment company from a small business concern. (Public Law 85-699, tit. III, § 304, Aug. 21, 1958, 72 U. S. Stat. 693.) Following hearings before the House Committee on Banking and Currency, it was reported that there should be greater flexibility in the types of equity investments that investment companies might make to small business concerns. (House Rep. No. 1608, May 14, 1960; 1960 U. S. Code and Adm. News, pp. 2340, 2342.) The pertinent section was amended to provide that such equity capital could be furnished "in accordance with the regulations of the (Small Business )Administration." (Public Law 86-502, § 6, June 11, 1960, 74 U. S. Stat. 196.)

concern from an investment company for the issuance of equity securities by the concern to the company. (Code of Fed. Reg., tit. 13, § 107.501.) Such securities include instruments which evidence a debt and provide a right to or privilege to convert all or a part of the debt instrument into stock of the small business concern or provide nondetachable or detachable stock purchase warrants or options or both (Code of Fed. Reg., tit. 13, § 107.501; now § 107.502).

Appellants contend, however, that the funds furnished to Wilder, Inc. by plaintiff was a long-term loan and violated certain provisions of sections 107.601, 107.602 and 107.603 of the regulations. A study of statute and regulations establishes that the transaction was to furnish equity capital to Wilder, Inc. and not to make a long-term loan.

Similarly, we find no merit to the contention of appellants that the transaction violated subdivision (e) of section 107.501 (now § 107.503, subd. [a]) which prohibits acquisition of equity securities if the purpose thereof is to furnish financing for a period of less than five years. Section 62 of the Public Service Law of this State, as we have seen, prohibited Wilder, Inc. from issuing notes payable at periods of more than a year without authorization from the commission. The conflict was resolved by plaintiff obtaining in 1962 and 1963 from the Small Business Administration its consent to an exception to subdivision (e) of section 107.501 so that the one year loan could be made.

If perchance it could be found that the loan agreement in some respect violated any of these regulations it would not necessarily follow that such invalidity would result in a denial of relief to plaintiff. Neither regulations nor statute state that loans made in violation there of are void or unenforcible. (Cf. *Talco Capital Corp.* v. *Canaveral Int. Corp.*, 225 F. Supp. 1007, 1013, affd. 344 F. 2d 962.) "If the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy or appropriate individual punishment, the right to recover will not be denied." (*Rosasco Creameries* v. *Cohen,* 276 N. Y. 274, 278.)

We have reviewed the other contentions of appellants and find them to be without merit.

The judgment should be affirmed with costs and disbursements to plaintiff-respondent.

The order denying defendants' application for reconsideration entered February 11, 1966, should be reversed and the motion granted without costs or disbursements. The determina-

tion on the main question should be determined in accordance with the views expressed in the opinion on the main appeal (No. 10446) decided simultaneously herewith.

BREITEL, J. P., RABIN, McNALLY and STEVENS, JJ., concur.

No. 10446 — Order and judgment (one paper) unanimously affirmed, with $50 costs and disbursements to the respondent.

No. 10447 — Order entered on February 11, 1966 denying defendants' application for reconsideration, unanimously reversed, without costs and without disbursements, and the motion granted. The determination on the main question is determined in accordance with the views expressed in the opinion on the main appeal (No. 10446) decided simultaneously herewith.