**ALLIANCE BUSINESS INVESTMENT COMPANY, an Oklahoma Corporation, Plaintiff in Error,**

v.

**G–R DEVELOPMENT COMPANY, an Oklahoma Corporation, Defendant in Error.**

No. 41672.

Supreme Court of Oklahoma.

Dec. 3, 1968.

**742**

Rosenstein, Mesirow, Livingston, Fist & Ringold, Tulsa, for plaintiff in error.

Ralph Brainard, Claremore, Conner, Winters, Randolph & Ballaine, Tulsa, for defendant in error.

Charles M. Noone, Washington, D. C., Waldo F. Bales, Tulsa, amici curiae.

BLACKBIRD, Justice.

The plaintiff in error, hereinafter referred to as "defendant" is licensed to do business as a "Small Business Investment Corporation" under the provisions of the Small Business Investment Act of 1958 (72 Stat. 691, Tit. 15 U.S.C.A. § 681 et seq.), hereinafter referred to merely as the "Act".

On September 18, 1961, defendant in error, hereinafter referred to as "plaintiff", negotiated a loan of $23,000.00 from defendant, the proceeds of which were to be used to remodel a building on certain Rogers County real estate for use as a bowling center, under the terms of a certain "Loan Agreement", executed the same day. In connection with said loan, plaintiff delivered to defendants its promissory note in that principal amount, payable in monthly installments, its second mortgage covering the real estate, a letter executed by two of its officers and principal stockholders, C. T. Redfern and A. L. Graham, guaranteeing repayment of said loan, another instrument executed by these two stockholders, entitled "Pledge of Securities With Voting Rights", and another written document entitled "Seven-Year Common Stock Purchase Warrant" executed for plaintiff, by its president.

Almost two years later, plaintiff, desiring to repay the balance due on said loan, verified the amount of said balance as $21,723.82, and, on August 5, 1963, enclosed a cashier's check for said amount in a letter to defendant tendering said check as payment in full of said indebtedness, subject to defendant's return of the above mentioned instruments plaintiff had delivered to defendant when the loan was made, as aforesaid, together with the stock certificates defendant was holding under the terms of Redfern's and Graham's aforementioned pledge.

Shortly thereafter, plaintiff instituted the present action alleging in its petition, among other things, that defendant refused to return the above mentioned Seven-Year Common Stock Purchase Warrant " * * * and as a consequence thereof refused to accept its above mentioned tender of the loan repayment in satisfaction of its said indebtedness to defendant." Plaintiff further alleged that if defendant exercised the rights purportedly granted to it by the stock purchase warrant, it would obtain, for $23,000.00 an ownership interest in plaintiff corporation worth much more than that sum, and "thereby be unjustly enriched." Plaintiff further alleged, among other things, that at the time of the stock purchase warrant's execution and delivery, defendant's officers represented to plaintiff's officers that the warrant was desired only as additional security for the repayment of the loan, and that the right to purchase stock, therein purportedly granted, would not be exercised, unless plaintiff defaulted in carrying out its obligations under the Loan Agreement. Plaintiff alleged, in substance, that it had never been in default, and prayed, among other things,

for a judgment cancelling said stock purchase warrant and ordering it returned to plaintiff. Copies of all of the above-mentioned instruments executed and delivered in connection with the loan transaction were attached to plaintiff's petition.

In its answer to plaintiff's petition, defendant characterized as "irrelevant", plaintiff's allegations that defendant's officers had represented to plaintiff's officers that the Stock Purchase Warrant was desired only as additional security for the loan, and would not be exercised unless plaintiff defaulted in carrying out the terms of the Loan Agreement. In said pleading, defendant admitted that the installment payments under the promissory note had been paid, as they became due, but it denied that plaintiff had never been in default of any of the note's provisions.

In its said answer, defendant further alleged that, pursuant to § 308 of the Act, certain Federal Rules and Regulations governing the operations of Small Business Investment Companies had been "prescribed", and that § 107.501 of these Rules and Regulations (Tit. 13 CFR) authorized defendant's acquisition of the Stock Purchase Warrant from plaintiff, that said Warrant was properly acquired, and "is a present, valid and subsisting obligation of plaintiff." Defendant concluded its answer by praying that plaintiff be denied any relief, and, in a cross petition, sought judgment over against plaintiff on three alleged causes of action, in which, it asserted, among other things, that the balance due on the promissory note, as of August 2, 1964, was $19,664.95, with interest at the rate of 10% per annum from that date until paid; that plaintiff was liable to defendant in the further sum of $2325.00 for attorneys' fees; and sought a money judgment against plaintiff for the total of these sums, as well as foreclosure of its real estate mortgage, and the appointment of a receiver for plaintiff's business and the mortgaged property.

In its reply to defendant's answer and answer to cross petition, plaintiff alleged, among other things, that the only substantial issue in the cause was whether or not the defendant was entitled to retain the Stock Purchase Warrant after plaintiff's tender of the loan's repayment; and it therein moved for judgment on the pleadings. Plaintiff also therein denied that the Stock Purchase Warrant was obtained by defendant under, or pursuant to, § 107.501, supra, and alleged, among other things, that the provisions of the Regulations' § 107.601, under which the loan from defendant to plaintiff was made, "expressly prohibited the defendant from acquiring any stock or other proprietary interest in a borrower, except through the medium of collateral security." Plaintiff denied that defendant had any right, title, or privilege to the Stock Purchase Warrant under the Act, or the Federal Rules and Regulations prescribed thereunder.

After defendant filed a reply to plaintiff's answer to its cross petition, the parties agreed (according to the recital in the journal entry of the court's judgment) that "certain questions of law" should be presented and decided upon the parties' stipulation of facts and their briefs, at a pre-trial conference held after plaintiff had filed in the case a deposition given by R. L. Graham, evidently contemplated to support its hereinbefore mentioned allegations concerning the representations made to plaintiff's officers by defendant's officers that the stock-purchase right purportedly given defendant by the Stock Purchase Warrant would not be exercised, except in the event of plaintiff's default in fulfilling its obligations under the parties' Loan Agreement.

The judgment thereafter entered in plaintiff's favor and denying defendant any recovery, or relief, on its cross petition, was based upon certain findings of fact and conclusions of law incorporated in its journal entry. The material portions of these findings and conclusions, as they appear therein, are as follows:

"(findings of fact)

"3. From an examination of the pleadings and exhibits filed in this case, the written documents filed as exhibits to

the Pleadings fully evidence the transaction out of which this action arises. From the four corners of these documents, the Stock Purchase Warrant attached as Exhibit F to plaintiff's Petition was not acquired by the defendant in connection with the acquisition by defendant of an equity security issued by the plaintiff, but was obtained in connection with a loan of money from defendant to plaintiff.

"4. The applicable regulations of the Small Business Administration prohibit defendant from acquiring any proprietary interest in plaintiff in connection with the making of loans by defendant to plaintiff except as collateral and security for the loan. The Stock Purchase Warrant involved in this action was obtained by defendant in violation of the applicable Regulation.

"* * *

"(conclusions of law).

"1. The Stock Purchase Warrant and the other documents attached as exhibits to plaintiff's Petition in this case are clear and unambiguous on their face, and parol testimony is not admissible to prove either that no consideration was given for the issuance of the Stock Purchase Warrant or for the purpose of proving that the defendant represented that the Stock Purchase Warrant was desired and would be used only as additional collateral in connection with the making of the loan and would not be exercised except in the event of default in the payment of the promissory note attached as Exhibit B to the Petition of plaintiff.

"2. The Stock Purchase Warrant is illegal and void, in contravention of § 107.601 of the Regulations of the Small Business Administration, except insofar as it is considered as additional collateral under § 107.601 of said Regulations.

"3. The violation by the defendant of § 107.601 of the Regulations of the Small Business Administration in obtaining the Stock Purchase Warrant in connection with a long term loan as defined in the Regulations, to defendant, renders the warrant void and unenforceable and plaintiff is entitled to judicial relief and to a permanent injunction ordering defendant to surrender up and cancel the Stock Purchase Warrant upon payment of the indebtedness evidenced by the note described in the Petition and defendant is hereby permanently enjoined from transferring or negotiating the said Stock Purchase Warrant and is ordered to cancel and surrender up the same to plaintiff under tender by plaintiff of payment of the above described indebtedness.

"4. Plaintiff has attempted to pay and discharge the indebtedness to defendant on which defendant's Cross-Petition is based, but has been unable to do so by the wrongful acts of defendant in refusing to surrender up the above described Stock Purchase Warrant and plaintiff is not in default with respect to such indebtedness. Defendant is therefore not entitled to any relief under its Cross-Petition."

After the overruling of defendant's motion for a new trial, it perfected the present appeal.

The tenor of defendant's arguments for reversal are, in brief substance, that the trial judge misapprehended the nature of the transaction involved in this case and mistakenly determined that it was entirely a loan transaction, with the Stock Purchase Warrant being executed and delivered by plaintiff to defendant as a part of the loan's collateral security, instead of representing an independent right in the defendant, as lender, to purchase stock in plaintiff, the borrower company, as an added inducement to defendant to make the loan, which said right to purchase stock is enforceable without regard to the loan's repayment.

The aforecited regulations under the Small Business Investment Act (Tit. 13 CFR, §§ 107.501 and 107.601, supra) cited, and discussed in the parties' briefs, provide

for parties, like the defendant—referred to therein as "Licensee"—to be the source of funds for small business concerns through two vehicles, namely: "Equitable Capital", and "Long-Term Loans". Equity Capital is provided for in § 107.501, supra, as follows:

"(a) Each Licensee shall constitute a source of Equity Capital for incorporated small business concerns; which capital shall be supplied in a manner and under terms consistent with regulations of the Administration.

"(b) 'Equity Capital' means funds received by an incorporated small business concern from a licensee as the consideration for the issuance of Equity Securities by such concern to such Licensee.

"(c) 'Equity Securities' means:

"(1) Certificates of stock of any class;

\* \* \* \* \* \*

"(2) Instruments which evidence a debt and which provide a right or privilege to convert all or any portion of the debt instruments into stock of the small business concern, *or provide nondetachable or detachable stock purchase warrants.* \* \*

\* \* \* \* \* \*

"(d) Equity Securities which evidence a debt may be secured by collateral. \* \* \*"

Long-term loans are provided for in § 107.601, in part, as follows:

"(a) Each Licensee shall constitute also a source of funds for long-term loans for the sound financing of the operations, expansion and modernization of small business concerns. *Such loans shall not provide any right in a Licensee to acquire* any stock or other proprietary interest in the borrower, *except through the medium of collateral security.* \* \* \*" (Emphasis added.)

In its argument, plaintiff concedes that, under the terms of the transaction involved here, defendant could accept repayment of the loan it made plaintiff, in full, and, without converting or using any part of the loan indebtedness for that purpose and could acquire stock in the plaintiff company independently of the status of said indebtedness, merely by exercising the stock-purchase right given it in the Stock Purchase Warrant. Plaintiff argues that, because of this feature of the transaction (the nonconvertability of the debt into stock) the Stock Purchase Warrant could not be considered an "Equity Security", as described in the above quoted portion of § 107.501, supra. This argument ignores paragraph (c) (2) of said section, which recognizes that those instruments evidencing a debt, that may be considered an Equity Security under that paragraph's definition of that term, may provide " \* \* \* non-detachable or detachable stock purchase warrants \* \* \*". This was recognized in General Venture Capital Corp. v. Wilder Transp., Inc., 2 A.D.2d 173, 271 N.Y.S.2d 805. In the present case, an instrument evidencing the debt, i. e., the Loan Agreement, provided in its paragraph "4" as follows:

4. Borrower shall issue a stock warrant to Lender, exercisable in its entirety only, within seven (7) years from date, entitling the registered holder thereof to purchase from the company at par value fully paid and non-assessable shares of common stock of the company, as follows: 15,125 shares of Class "A" voting stock and 7,875 shares of Class "B" non-voting stock.

The facts of this case make it a stronger one than the above cited New York case, for inducing the conclusion that the stock-purchase right granted by the Warrant was independent of the loan's repayment, for here the expiration date of that right was not coterminus with the date for repayment of the loan, as the court there determined. If the note involved here is paid out at the rate provided therein, it will not be fully satisfied until the latter part of the year 1971, while according to the terms of the Stock Purchase Warrant, the right to purchase stock, therein granted, can be exer-

cised not later than September, 1968. As we believe the court's reasoning in the General Venture Capital Corp., case, supra, is sound, and plaintiff has cited no case in point to the contrary, we hold, in conformity therewith, that the Stock Purchase Warrant involved here was an Equity Security given in connection with the transaction to provide equity capital, rather than as security for a long-term loan to plaintiff, and therefore (as held in that case) is not within the prohibition of the provisions in paragraph (a) of § 107.601, supra, that: "* * * Such loan shall not provide any right in a licensee to acquire any stock * * * in the borrower, except through the medium of collateral security."

In plaintiff's argument under its Proposition III, it attempts to raise questions concerning the correctness of the trial court's hereinbefore quoted conclusion to the effect that parol testimony was not admissible for the purpose of proving that defendant represented to plaintiff that the Stock Purchase Warrant "* * * would not be exercised execpt in the event of default in the payment of the promissory note * * *". Although plaintiff urges that, in the event we should reach the conclusion above announced, then we should instruct the trial court to permit plaintiff, at a new trial, to introduce such evidence, plaintiff also recognizes that said court's conclusion, as to the inadmissibility of such evidence, was not a necessary part of its judgment, and states that "this issue is not properly involved in this appeal." In view of this situation, we are of the opinion that it is both unnecessary, and inappropriate, for us to express any opinion on that question at this time.

We have considered all of the arguments advanced, and authorities cited, by plaintiff on all of the questions discussed in the brief, but have found none of them sufficient to uphold the judgment of the trial court. Said judgment is therefore reversed with instructions to said court to grant a new trial.

All the Justices concur.