Leonard N. Cohen, J,
This is an action upon stipulated facts to recover consequential damages for loss of profits claiming a breach of a futures purchase contract of 360,000,-000 yen for United States $1,018,710 entered into in April for October delivery in Japan and providing for an automatic *442 three-month delivery date extension if the seller defendant bank failed to deliver due to circumstances beyond its control. After an intervening Japanese government regulation frustrated the October performance in Japan the defendant bank, instead of extending the delivery date by three months as required by the contract, credited plaintiff’s account under plaintiffs protest with the dollar value of yen on that date less the purchase price, reflecting a profit to plaintiff of $68,490. In January, 1972, when delivery would have been made had there been a three-month extension, the dollar value of the yen was $59,000 more than its value on the October delivery date, for which sum recovery is sought as compensatory damages.
Although each party gives somewhat differing import to the contract of April 12, 1971 and to the currency regulation, it appears the agreement, drawn by defendant, was clear and unambiguous on its face in providing under paragraph IV that "if circumstances beyond our control should prevent delivery hereunder of all or any part of the Foreign Exchange within the time specified for the delivery thereof; the time of delivery shall be automatically extended three months and if such circumstances should at the end of that period continue to exist, the Foreign Exchange not therefore delivered hereunder may, at our option, be purchased by us from you at our then buying rate.”
In denying failure of performance of delivery, defendant contends options or tender of delivery were made, but rejected by plaintiff, thereby fulfilling defendant’s performance and excusing its nondelivery. A tender however under section 2-503 of the Uniform Commercial Code requires an offer and an ability to deliver. But defendant was incapable of delivery because of the intervening Japanese foreign currency regulations. The options offered plaintiff were comprised of various modes of substituted performance which in effect remake and vary the unambiguous terms of the contract.
Defendant argues that the time extension of paragraph IV was for its sole benefit and protection in the event of impossibility of performance of delivery, or as aptly stated in defendant’s brief, "to excuse nondelivery of the bank in the event its hedge position fails.” Defendant, as draftsman of its own remedy, therefore considered additional time as crucial to overcome its inability to deliver and resultant hardship of failure to hedge or the necessity to cut losses. Significantly on *443 the other hand the plaintiff purchased a three months’ futures contract with a possibility for delivery in six months. That contingency was reasonably included in plaintiff’s cost in April, 1971. Plaintiff also assumed the risk of profitability or loss in a fluctuating futures market by the automatic time extension in the event of defendant’s nondelivery. The fact the dollar declined in value was fortuitous. What is important is that time was a material and essential element of the contract involving risks of profitability or loss to both seller and buyer, in an inherently fluctuating futures market, whether the transactions are characterized as hedging, speculation or trading.
It would seem that underlying the issue here was the bank’s failure or inability to hedge its position on or before the October maturity date and shifting its risks to the buyer by offering alternative substitutes of performance at the time of its nondelivery. The plaintiff’s rejection of the so-called options, defendant claims, demonstrates plaintiff’s bad faith breach of its ability to accept delivery. However plaintiff was not obliged to accept these modes of substituted performance either under the contract or under law.
Assignment of delivery to a third party in Japan to avoid the restrictive Japanese regulations on the bank’s ability to deliver to the plaintiff itself was a method of substituted performance proposed by the bank.
Although the contract did not specify to whom yen delivery was to be made, it did confer discretion on the plaintiff in this regard upon the October maturity date; which plaintiff exercised for its own account. But such proscribed delivery, defendant contends, could have been overcome had plaintiff accepted defendant’s substituted proposal to assign its yen rights. The availability and rejection of such substituted performance, defendant urges, excuses its nondelivery as called for under the contract. Where performance is impossible, a commercially reasonable substitute by buyer or seller excuses strict compliance with contract terms which do not go to the essence of the agreement. (Official Comment 1, Uniform Commercial Code, § 2-614.) The imposition upon plaintiff of a foreign yen assignment was neither a contractual obligation nor a commercially reasonable substitute. The contract failed to specify such an assignment although it could have been reasonably anticipated by the defendant draftsman for its own protection. It is axiomatic that a commercial contract will be *444 strictly construed against the draftsman (Rentways v O’Neill Milk & Cream Co., 308 NY 342; General Venture Capital Corp. v Wilder Transp., 26 AD2d 173; 3 Corbin, Contracts, § 559; 4 Williston, Contracts [3d ed], §§ 610B, 620, 621, 628). Secondly such an assignment would have curtailed the contractual essence of the automatic extension of time. (Uniform Commercial Code, § 2-614.) Finally, the stipulated facts do not indicate defendant offered to bear the cost or to ensure protection of plaintiff’s interest in the event of such foreign assignment. Rather this burden was placed wholly on plaintiff. Under all these circumstances such a proposal constitutes neither a reasonable commercial substitute nor tender excusing defendant’s nondelivery as a matter of law. Nor does it establish a bad faith breach of a contractual obligation by the plaintiff. (Boer v Garcia, 240 NY 9.)
Defendant’s proposal to repurchase all or part of the undelivered yen before the expiration of the extended period refashions the contract for clearly under paragraph IV the exercise of this option was available to defendant only after the expiration of the extended period. Moreover, this contention renders meaningless the self-executing automatic extension provision of paragraph IV. Established rules of contract construction preclude such an interpretation. (Laba v Carey, 29 NY2d 302, 308.)
After defendant’s nondelivery, payment of a substantial premium of $59,000 or the market cost on the October maturity date, also proposed as a condition for extending time, was not expressly provided for under the contract and constituted a nonobligatory penalty. Moreover the heavy conditional cost imposed upon plaintiff was an unreasonable commercial substitute rendering section 2-614 of the Uniform Commercial Code inapplicable.
The time and place of delivery and to whom are material elements in the purchase of fluctuating market price currency futures. Therefore defendant’s unexcused failure to extend the contract and consequent nondelivery of yen to plaintiff in Japan on January 14, 1972, as called for under the contract, constituted the sole material breach.
Turning to the measure of damages, the buyer is entitled to the market price less the contract price at the time it learned of the breach together with any consequential damages. (Uniform Commercial Code, § 2-713, subd [1].) Consequential damages to which plaintiff would be entitled are defined under *445 section 2-715 (subd [2], par [a]) of the Uniform Commercial Code as "any loss resulting from general * * * requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise”. In this case the seller defendant had reason to know of and anticipate the plaintiffs general requirement and needs — namely trading in the fluctuating, speculative foreign currency futures market in order to make a profit. Whether or not plaintiff hedged its yen position was of no concern of defendant and in fact it appears here the plaintiff was trading on its own behalf. Plaintiff makes no claim for special damages arising from prevention of completion of other contracts due to the breach.
As for the second condition under section 2-715 (subd [2], par [a]) of the Uniform Commercial Code requiring mitigation of losses, the plaintiff could only have "covered” at the time of the breach either by a repurchase of a three months’ futures contract absorbing its full profit, or by paying to the bank a substantial premium almost equalling its profit as a condition for the extension. In either event the expense of such cover would be unreasonable and unduly burdensome and constituted a good faith justification for plaintiff’s declination to undertake such expense.
Plaintiff calculates its compensatory damages by looking to its ultimate loss of profits; subtracting profits received from defendant on the October sale to those it would have received had yen been sold in January but for the breach. Accordingly, the plaintiff is entitled to a judgment in the sum of $59,000, plus interest from January 14, 1972.