Vincent J. Sinkwich, Respondent, v. E. F. Drew & Co., Inc., Appellant.

Third Department, August 13, 1959.

*Samuel J. Loewenstein* for appellant.

*Godfrey P. Schmidt* for respondent.

REYNOLDS, J.    Appeal by the defendant from a judgment entered on a decision of an Official Referee awarding plaintiff damages of $50,610.82.    Defendant also appeals various orders pertaining to the reopening of the case and reinstatement of the judgment.

In December, 1940 the plaintiff entered into two agreements with Napthole, Inc., the defendant's predecessor in interest. Pursuant to the first agreement Napthole was given the right to manufacture and lease a detergent dispensing machine which the plaintiff had invented, for a period of one year with an option to purchase the machines and patent thereon and the trade name "Mar-Vin".    Under the second agreement the plaintiff was employed as a salesman, this being terminable at will by either party, and providing that if the option were exercised the defendant was to pay the plaintiff 5% of the net profits on the sale of "Mar-Vin Products" for so long as

it leased the machines or used the name " Mar-Vin ". " Mar-Vin Products " were defined as those used " in connection with " the dispensing machine. The option was exercised and in 1943 a modification of the original agreement was entered into. This provided that in place of 5% of the net profits the plaintiff was to receive 1% of the net sales of " Mar-Vin Products ". In 1953 a dispute arose between the parties over a further reduction. As a result, plaintiff resigned and defendant notified him that as of August 1, 1953 he would only be paid 1% of the net sales of 6 out of more than 30 " Mar-Vin " products, these 6 being the only ones used in the dispensing machines.

This action was commenced on December 17, 1953 and when it was previously before this court on review of a motion to dismiss the complaint, the court construed the cause of action stated in the present amended complaint to be for the recovery of royalties (*Sinkwich* v. *Drew & Co.*, 2 A D 2d 788). The defendant counterclaimed for the conveyance of certain patent improvements and for money paid under mistake. The Referee initially made an award to the plaintiff of $5,478.94, this not including prospective damages. Thereafter he reopened the case on plaintiff's motion, took further testimony from the plaintiff and made an award of $20,610.85 for damages to the end of 1957 and $30,000 for prospective damages. The defendant was later allowed to cross-examine the plaintiff and submit evidence but the award was reinstated.

The definition of " Mar-Vin Products " in the original agreement as those used " in connection with " the machines is clear and standing alone admits of no ambiguity. However, other terms of the agreements render it ambiguous. The defendant's obligation to pay the plaintiff was to continue so long as it leased the machines or used the name " Mar-Vin ". It is clearly stated that the defendant was to pay as long as it used the name " Mar-Vin " and this indicates that it was to pay on all products on which it used the name " Mar-Vin ". There is further the language in the modification agreement stating that the plaintiff had theretofore received payments " to which he was entitled." At that time the defendant was paying on all " Mar-Vin " products. This ambiguity makes applicable the rule of practical construction, that is, the interpretation which the parties have placed on the contract (*Halperin* v. *McCrory Stores*, 207 App. Div. 448, 451, affd. 239 N. Y. 547; *Brooklyn Public Lib.* v. *City of New York*, 250 N. Y. 495, 501). In *Halperin* (*supra*, p. 449) the plaintiff entered into a lease with defendant's predecessor in title which pro-

vided: "The landlord agrees to furnish such heating to the demised premises as the plant at present installed will provide." Plaintiff was engaged in a manufacturing business and required heat during the day and night during his busy season. Prior to the time defendant acquired the building such heat was furnished. Defendant claimed the heat was not intentionally furnished for plaintiff's purposes but was the result of keeping the water in the sprinkling system warm. The court pointed out that defendant's predecessor had entered into leases with plaintiff for other parts of the same building and had renewed the original, all of which contained the quoted provision. In directing judgment enjoining defendant from cutting off the heat at night, the court said (pp. 450–451): "If this action were brought under the first lease to compel the landlord to furnish heat at night, I think it would then be a question to be determined from the construction of this clause of the lease, whether heat was to be furnished at night or not. But I think the course of dealings of the parties has changed the question, to some extent at least. It is undisputed that when the lease was renewed each time the landlord knew that the tenant was using the leased premises for night work; that heat was essential to enable him to do so, and that the plant at that time installed was providing it. The lease then made must be construed in the light of the surrounding circumstances. Waiving the question of practical construction and considering only the construction of the lease in view of the surrounding circumstances, was not the lessee justified upon a renewal in believing that under the new lease he would be entitled to receive the same amount of heat and during the same hours he had under the former lease? The heating plant was the same. There was nothing to warn the lessee that any change was anticipated and, in fact, no change was contemplated.

"'In the construction of contracts, where there is no ambiguity, it is the duty of the court to determine their meaning. Moreover, where the terms and language of the contract are not disputed, its legal effect is a question of law to be determined by the court. It is always the duty of a court, in construing a written instrument, if possible, to ascertain the intention of the parties * * *.

"'If this contract is to be regarded as somewhat indefinite or ambiguous, we may resort to the surrounding facts and circumstances as they existed when it was made to aid us in its interpretation and also consider the practical construction which the parties have given it. Its interpretation by them is

a consideration of importance. As was said by SWAYNE, J., in *Insurance Co.* v. *Dutcher* (95 U. S. 269, 273): "The construction of a contract is as much a part of it as anything else. There is no surer way to find out what parties meant, than to see what they have done." (*Woolsey* v. *Funke,* 121 N. Y. 87.) ' (*Sattler* v. *Hallock,* 160 N. Y. 291, 297, 301.) "

Similarly in *Brooklyn Public Lib.* (250 N. Y. 495, 501, *supra*), the Court of Appeals quoted the following from *City of New York* v. *New York City Ry. Co.* (193 N. Y. 543, 548): "When the parties to a contract of doubtful meaning, guided by self-interest, enforce it for a long time by a consistent and uniform course of conduct, so as to give it a practical meaning, the courts will treat it as having that meaning, even if as an original proposition they might have given it a different one."

Therefore, it must be held that the defendant is obligated to pay royalties on the net sales of all "Mar-Vin" products as long as it leases the machines or uses the name "Mar-Vin". The finding below that the sale of the same products under a different name than "Mar-Vin" would obligate the defendant to pay royalties is erroneous. The defendant could clearly terminate its liability by ceasing to lease the machines or use the name "Mar-Vin". The defendant admits that no such termination was attempted until June, 1954. Inasmuch as only damages up to the commencement of the action may be recovered here, whether there was such a termination in June of 1954 is of no importance. The plaintiff asserts that prospective damages are recoverable here on the basis of the doctrine of anticipatory repudiation. It is clear, however, that this doctrine has no application in cases such as this where there is a contract for the periodic payment of money and recovery must be limited to the payments due as of the commencement of this action (*Indian Riv. Islands Corp.* v. *Manufacturers Trust Co.,* 253 App. Div. 549, 551; *Kelly* v. *Security Mut. Life Ins. Co.,* 186 N. Y. 16, 19; *McCaskey* v. *Cumberland Glass Mfg. Co.,* 193 App. Div. 856, affd. 233 N. Y. 552; *Sulyok* v. *Penzintezeti Kozpont Budapest,* 279 App. Div. 528; 5 Williston, Contracts [revd. ed.], § 1328, p. 3732 *et seq.*; Restatement, Contracts, § 316). Since this case was tried on a theory of total breach, the amount of royalties due after August 1, 1953, when the defendant stopped paying on all "Mar-Vin" products, and the commencement of the action on December 17, 1953 does not appear in the record. A new trial should be had on this limited question of damages unless the parties stipulate as to the amount of these damages.

Since we have reached this conclusion the appeals from the various orders pertaining to the reopening of the case and reinstatement of the judgment become academic.

Judgment should be reversed on the law and the facts and a new trial ordered on the question of damages, without costs, unless within 20 days after the entry of an order hereon the parties stipulate as to the damages sustained to the date of the commencement of the action, in which event the judgment should be modified to that amount and as modified affirmed, with costs.

BERGAN, J. P., COON, GIBSON and HERLIHY, JJ., concur.

Judgment reversed on the law and the facts and a new trial ordered on the question of damages, without costs, unless within 20 days after the entry of an order hereon the plaintiff stipulates to accept the sum of $1,200 as the damages sustained to the date of the commencement of the action, in which event the judgment is modified accordingly and as modified affirmed, with costs to the plaintiff, without prejudice to the right of plaintiff to commence a new action for damages sustained after the commencement of this action.

Order affirmed, with costs.